RPF/klc: 06/08/17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY, and MURRAY ENERGY CORPORATION, | Case No. 5:17-CV-79 (Bailey) |
| Plaintiffs, | CIVIL ACTION NO.: 17-C-70<br>Judge Hummel<br>(Marshall County Circuit Court) |
| v. | |
| THE NEW YORK TIMES COMPANY, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

NOW COMES Defendant The New York Times Company (hereinafter the "The New York Times"), by its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), and requests that this Court dismiss Plaintiffs' Complaint. Plaintiffs have not adequately plead falsity or actual malice, two essential elements of any plausible defamation claim. The Complaint is also constitutionally deficient because the challenged statements are not "of and concerning" any of the named Plaintiffs. In addition, the challenged statements in The New York Times' Editorial at issue are both true and expressions of opinion and commentary on a significant matter of public concern, not actionable under First Amendment precedent or applicable West Virginia law.

The New York Times' Editorial, referenced in Plaintiffs' Complaint, is protected by the First Amendment and black-letter law and should be dismissed, with prejudice.

## I. <u>BACKGROUND</u>

On April 24, 2017, The New York Times published an Editorial, by its Editorial Board, opposing apparent influence-peddling titled "**Money Talked Loudest at Donald Trump's Inaugural**" in its Opinion Pages (the "Editorial").[1] The Editorial revealed large contributions to President Trump's Inauguration and the willingness of the President to do the bidding of the donors who had demanded "regulatory favors" in the first months of his presidency. The Editorial stated that "Bob Murray"[2] donated $300,000 toward the inaugural festivities and noted significantly larger contributions made by other individuals and companies in the coal, oil, gas, chemical and pharmaceutical industries. The Editorial contained the following paragraph being challenged by Plaintiffs:

> *"I'm not a patient man," warned Mr. Murray, who earned infamy when he falsely insisted that the 2007 collapse of his Crandall Canyon mine, which killed six miners, was due to an earthquake, not dodgy mining practices. "I'm going to be watching that things happen as fast as they can."* **EXHIBIT A**.

The statement that Bob Murray "insisted" that the 2007 Crandall Canyon Mine collapse that killed six miners ("The Crandall Canyon Mine Disaster") was caused by an earthquake is true and, indeed, Plaintiffs concede as much. *See Complaint ¶17.* It is also true that official proceedings and reports from those proceedings determined that an earthquake **did not** cause The Crandall Canyon Mine Disaster, rendering Bob Murray's statements to the contrary false. This challenged statement regarding The Crandall Canyon Mine Disaster (the "Crandall Canyon Statement"), in addition to being true, refers only to Bob Murray, the individual, and is not "of and concerning" any of the Plaintiffs. *See* **EXHIBIT A**. Plaintiffs' Complaint cursorily avers

---

[1] Plaintiffs' Complaint cites an internet address where the Editorial may be accessed but, for the convenience of the Court, a copy of the Editorial is attached to this Motion as **EXHIBIT A**.

[2] The Editorial also stated that Bob Murray "demanded" that President Trump "pull the United States out of the Paris climate agreement in the first three months" of his term, but this particular accommodation took more than four months.

that "[b]ecause the public equates the mining business of each Plaintiff with Mr. Murray, the New York Times' false statement that Mr. Murray lied about the cause of a deadly mine collapse injured the reputation and business of each Plaintiff." *See Complaint ¶17.* The bare assertion that "the public" believes Bob Murray to be synonymous with the corporate Plaintiffs, none of which even existed at the time of the Crandall Canyon Mine Disaster,[3] has no basis in law or fact and cannot support any plausible claim. The absence of Bob Murray as an individual plaintiff renders the Complaint constitutionally defective. Furthermore, the Crandall Canyon Statement, besides being admittedly true, does not explicitly state or reasonably imply that Mr. Murray is a liar or that Plaintiffs are liars.

Plaintiffs take issue with a second statement in the Editorial and attempt to state a claim for defamation on the basis that they "[a]s part of the group that constitutes Murray Energy," have been harmed by the true statement that "Murray Energy is a serial violator of federal health and safety rules" (the "Serial Violator Statement"). With respect to this challenged statement, Plaintiffs again have not alleged falsity. Rather, they suggest that the accurate description of Murray Energy as a "serial violator" implies that their "group" operates outside of industry norms. *See Complaint ¶19.* By failing to allege that the challenged statements are actually false, an essential element of any defamation claim, Plaintiffs have failed to state any plausible claim for relief.

Plaintiffs and their owners are public figures, required to prove that the challenged statements are false and that The New York Times acted with "actual malice" in publishing the Editorial. However, the Complaint does not sufficiently allege either element.

In publishing the Editorial, The New York Times and its Editorial Board were commenting on a significant issue of public importance and concern and acted properly. All of

---

[3] West Virginia Secretary of State (www.sos.wv.gov/business-licensing).

The New York Times' conduct is fully protected by well-settled legal principles under the First Amendment to the United States Constitution, Article III, Section 7 of the Constitution of the State of West Virginia, and common law.    For the reasons set forth herein and the compelling constitutional interests at stake, the Complaint should be dismissed at the earliest opportunity, with prejudice.

## II.  PROCEDURAL STATUS

This civil action, originally filed in the Circuit Court of Marshall County, West Virginia, was timely removed to this Court in accordance with 28 U.S.C.S. §1441(a) and §1446. The amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists because Plaintiffs and Defendant are completely diverse.

## III.  LAW & ARGUMENT

Plaintiffs have not sufficiently alleged that either of the statements they identify in their Complaint is actually false. Likewise, the Complaint does not adequately allege that The New York Times acted with actual malice, the requisite degree of fault applicable to a libel claim asserted by public figures. Moreover, the Complaint is devoid of any allegation that the challenged statement regarding The Crandall Canyon Mine Disaster was "of and concerning" Plaintiffs. Rather, the Editorial referred to "Bob Murray," the individual, and referenced his individual financial contribution to the Inauguration. The requirement that a defamatory statement must be "of and concerning" the plaintiff in order to be actionable is rooted in Constitutional law and has been recognized in every state, including West Virginia. The Editorial is a privileged publication containing the perspective of The New York Times Editorial Board on a matter of national importance and concern, not actionable libel.  For all of these reasons, Plaintiffs' Complaint fails to state a claim and should be dismissed.

### A.      Standard of Review for a Motion to Dismiss a Defamation Complaint.

Both the United States Constitution and the West Virginia Constitution require a heightened pleading standard in defamation cases filed by public figures.[4] See Syl. pt. 3, Long v. Egnor, 176 W. Va. 628, 346 S.E. 2d 778 (1986). In West Virginia, defamation actions are subject to a stricter standard of review in the context of a motion to dismiss under Rule 12(b)(6) due to the chilling effect that such claims have on First Amendment protections of free speech and freedom of the press. See id., at 632, 782. When considering a Motion to Dismiss a defamation Complaint, the West Virginia Supreme Court has ruled:

> The First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution **require** that trial courts **apply a stricter standard in appraising defamation actions filed by public officials or public figures** under a motion to dismiss filed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Unless the complaint demonstrates on its face sufficient facts to support the elements of a defamation action, the complaint should be dismissed under Rule 12(b)(6). Id., at Syl. pt. 3 (*emphasis added*).

This West Virginia standard is in line with the Federal Rules of Civil Procedure and recent precedent which require a level of specificity in pleadings. Plaintiffs are required to plead facts sufficient to allow a court to draw a reasonable inference that the defendant is liable for the misconduct alleged. See Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 566, 127 S.Ct. 1955, 1971 (2007) (*plaintiff must allege sufficient facts to create a "reasonable expectation" that discovery would reveal evidence sufficient to support the allegations of the complaint*). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements" are not entitled to the "assumption of truth." See Ashcroft v. Igbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949-50 (2009). A complaint must state a plausible claim for relief and not just a possible claim. Id. at 1949-50.

---

[4] As set forth herein, Plaintiffs and their owner Bob Murray are public figures.

When examining Plaintiffs' Complaint and their deficient allegations regarding falsity and actual malice within this framework, it is clear that Plaintiffs have not plead a cause of action sufficient "to raise a right to relief above the speculative level . . ." and have failed to set forth any plausible basis for an "entitlement to relief." Twombly, 550 U.S. at 555. See also SWVA, Inc. v. Lind, 2009 U.S. Dist. LEXIS 43099 (S.D. W. Va. May 21, 2009).

**B.    Elements of a Claim for Defamation.**

Although the West Virginia law of defamation governs this case, the First Amendment's press and speech clauses greatly restrict the common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern. See New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710 (1964). See also Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). This case meets all three of these special circumstances because Bob Murray and Plaintiffs are public figures and have been recognized as such in other judicial proceedings, The New York Times is a member of the press and the Editorial touches on a matter of public concern. In the presence of these factors, "the constitutional protection of the press reaches its apogee." Chapin, 993 F.2d at 1092. The Supreme Court of Appeals of West Virginia has agreed with this principle and has noted that "[t]he freedom of the press is one of the most hallowed protections contained in our Constitution. It allows the press to act as the watchdog of our citizens and to report on, criticize, and otherwise bring to public attention the actions and conduct of the government." Hinerman v. Daily Gazette Co., Inc., 188 W. Va. 157, 182, 423 S.E.2d 560, 585 (1992) (Miller, J., dissenting). The Editorial, commenting on large private contributions to the inauguration of President Trump was designed to accomplish exactly what the First Amendment protects.

Defamation is "[a] **false** written or oral statement that damages another's reputation." *Black's Law Dictionary* (9th ed. 2009) (*emphasis added*). A statement is defamatory if it tends to

"reflect shame, contumely, and disgrace" upon the plaintiff. Syl. pt. 1, Sprouse v. Clay Communications, Inc., 158 W. Va. 427, 211 S.E.2d 674 (1975). Whether a statement is capable of a defamatory meaning is a question of law. Syl. pt. 6, Long v. Egnor, 176 W. Va. 628, 346 S.E.2d 778 (1986). To recover on a libel claim, a public figure plaintiff must prove:

> (1) the publication of a defamatory statement of fact or a statement in the form of an opinion that implies the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and (3) the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false.

Syl. pt. 1, Hinerman v. Daily Gazette, 188 W.Va. 157, 423 S.E.2d 560 (1992). The elements are the same for a private individual except for the fault that must be proven on the part of the publisher. Syl. pt. 1, Crump v. Beckley Newspapers, 173 W. Va. 699, 320 S.E.2d 70 (1983). "In order to sustain an action for libel, a public official must present clear and convincing evidence that the media defendant acted with actual malice.   Actual malice must be proven with convincing clarity." Syl. pt. 4, Dixon v. Ogden Newspapers, Inc., 187 W. Va. 120, 416 S.E.2d 237 (1992). "Public figures may not recover in a libel action absent clear and convincing proof of actual malice or of reckless disregard of the truth on the part of the speaker or publisher of the false statements." Blue Ridge Bank v. Veribanc, Inc., 866 F.2d 681, 686 (4th Cir. 1989) (*internal citations omitted*).

**C.     As a threshold issue, Plaintiffs have not alleged the publication of a false statement of fact and, therefore, their Complaint fails to state a claim upon which relief may be granted.**

With respect to the statement that Mr. Murray "falsely insisted" that The Crandall Canyon Mine Disaster "was due to an earthquake," Plaintiffs have the burden of sufficiently alleging falsity. Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 n.6, 110 S. Ct. 2695 (1990); Phila. Newspapers, Inc. v. Hepps, 475 U.S. 767, 779 n.4, 106 S. Ct. 1558 (1986). A statement

that is **"substantially true"** cannot be defamatory. <u>Kilian v. Doubleday & Co.</u>, 367 Pa. 117, 79 A.2d 657, 660 (Pa. 1951) (*emphasis added*). "The sine qua non of recovery for defamation . . . is the existence of falsehood." <u>Nat'l Ass'n of Letter Carriers v. Austin</u>, 418 U.S. 264, 283, 94 S. Ct. 2770 (1974). Plaintiffs have not alleged that the Crandall Canyon Statement is actually false. To the contrary, Plaintiffs aver that The Crandall Canyon Mine Disaster was triggered by what is "commonly understood as an earthquake." *Complaint ¶17*; but this does not plead falsity. In their Complaint, Plaintiffs actually acknowledge the truth – that "an earthquake" **did not** cause The Crandall Canyon Mine Disaster. In electing to describe the cause of The Crandall Canyon Mine Disaster as "what is commonly understood as an earthquake," Plaintiffs tacitly admit the truth of the challenged statement in the Editorial.

Plaintiffs do not plead "an earthquake" as the cause, presumably because to do so would be a lie. It is not false for The New York Times to say that Murray's insistence that an earthquake caused the collapse was itself false. Even when Plaintiffs' allegations are taken as true, they do render the Crandall Canyon Statement false. As such, Plaintiffs have not stated a claim for defamation. Plaintiffs have likewise failed to specifically allege that the Serial Violator Statement is false. The characterization of Murray Energy as a serial violator of regulations is, after all, demonstrably true. Plaintiffs' claims regarding the Serial Violator Statement hinge on an unreasonable reading of the Editorial, which was based on a widely reported history of violations by Murray Energy. <u>See, e.g.,</u> <u>Murray v. Chagrin Valley Publ. Co.</u>, 2014-Ohio-5442, ¶12-16, 25 N.E.3d 1111, 1117-18, 2014 Ohio App. LEXIS 5265, *9-12 (Ohio Ct. App., Cuyahoga County Dec. 11, 2014) (*recognizing the absence of actual malice in failure of publisher to investigate a statement that Mr. Murray and his companies were known for violating safety and environmental regulations based on "the significant history" of those*

*violations*). The implication that Plaintiffs suggest in their Complaint – that the Editorial is meant to compare Murray Energy unfavorably to other companies in the coal industry – simply does not follow.

A reasonable reader could not fairly interpret the Serial Violator Statement to imply that Plaintiffs operate "outside the norms of industry regulatory compliance." *Complaint ¶19*. In determining whether a statement has a defamatory meaning, courts will consider the "ordinary meaning" of the words. Koolvent Aluminum Prods. v. Azrael, Gann & Franz, No. 94-1906, 1995 U.S. App. LEXIS 8858, at *8 (4th Cir. 1995) (citing Batson v. Shiflett, 325 Md. 684, 724 n.14, 602 A.2d 1191, 1211 (1992) *("The test is whether the words, taken in their common and ordinary meaning, in the sense in which they are generally used, are capable of defamatory construction.")*). The dictionary defines "serial" as "repeatedly committing the same offense and typically following a characteristic, predictable behavior pattern" and "violator" as "a person who breaks or fails to comply with a rule." OxfordDictionaries.com, https://en.oxforddictionaries.com/definition/serial, (last visited June 8, 2017); OxfordDictionaries.com, https://en.oxforddictionaries.com/definition/violator (last visited June 8, 2017). Therefore, given its ordinary meaning, the statement means that Murray Energy repeatedly fails to comply with the rules in the coal mining industry.

The Editorial does not state that other coal companies are not serial violators of health and safety rules or that repeated violations of those rules are unusual in the coal industry. Plaintiffs do not contest the accuracy of the Serial Violator Statement itself and have not averred that Murray Energy is **not** a "serial violator." In doing so, Plaintiffs have utterly failed to allege facts sufficient to state a defamation claim. The best Plaintiffs can do is to describe the Serial Violator Statement as implying that "Murray Energy was found guilty of a significant number of

violations or repeat violations outside the norms of industry regulatory compliance." *Complaint*
¶*19*. No such inference could be made by any reasonable reader and drawing such inferences
from the Editorial requires a leap wholly unsupported by the actual words used, which are not
alleged to be false.

> **D.    Plaintiffs' are public figures for purposes of this action and, to succeed on their defamation claim, must establish with convincing clarity that The New York Times acted with "actual malice" in publishing the Editorial in its Opinion Pages.**

"'[A]ny one claiming to be defamed by the communication must show actual malice or go
remediless. This privilege extends to a great variety of subjects, and includes matters of public
concern, public men, and candidates for office.'" New York Times, 376 U.S. at 281-82, 84 S.Ct.
710 (1964), quoting Coleman v. MacLennan, 78 Kan. 711, 723, 98 P. 281 (1908).   Plaintiffs'
allegations regarding the required element of "actual malice" fall far short of stating a plausible
claim for relief.

> **1.    Plaintiffs and their owner Bob Murray are public figures.** "Under West
Virginia law, a libel plaintiff's status sets the standard for assessing the defendant's conduct.
Plaintiffs who are public officials or public figures must prove by clear and convincing evidence
that the defendants made their alleged defamatory statement with knowledge that it was false or
with reckless disregard of whether it was false or not." Syl. pt. 2, in part, State ex rel. Suriano v.
Gaughan, 198 W. Va. 339, 480 S.E.2d 548 (1996).   In determining public figure status, the
inquiry "focuses on the person to whom the publicity relates and asks whether the individual
either by assuming a role of special prominence in the affairs of society or by thrusting himself
to the forefront of a particular public controversy . . . has become a public figure." Crump v.
Beckley Newspapers, 173 W. Va. 699, 712, 320 S.E.2d 70, 83 (1983) (quoting Campbell v.
Seabury Press, 614 F.2d 395, 397 (5th Cir. 1980)).

The Crandall Canyon Statement is unquestionably regarding Bob Murray, an individual who frequently thrusts himself into the midst of public debate in politics, environmental matters and on issues important to the coal mining industry and, in doing so, has achieved pervasive fame and notoriety in this community. By utilizing his wealth and influence in this manner, Bob Murray is properly characterized as a public figure for all purposes and in all contexts. See Gertz v. Welch, 418 U.S. 323, 351, 94 S. Ct. 2997, 3013 (1974) ("*In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts*"). Mr. Murray has been a vociferous voluntary participant in public debates regarding the coal industry, political causes and other newsworthy events. He has made numerous television and radio appearances, has testified before congressional committees and has thrust himself into the midst of political discourse. *See, e.g., List of Press Releases and television Appearances by Bob Murray (www.murrayenergycorp.com/media/)*; See Hatfill v. N.Y. Times Co., 532 F.3d 312 (4th Cir. 2008) (*Scientist was considered a public figure because he was a frequent instructor of government agencies, had frequent meetings with journalists, appeared on television, on radio, and in print, and was able to convene press conferences*); Fitzgerald v. Penthouse Int'l, 691 F.2d 666, 669 (4th Cir. 1982) (*Plaintiff was a public figure because he lectured publicly, published several articles and reports, published brochures, appeared on a segment of "60 Minutes" program and was interviewed for an investigative article*); accord Hutchinson v. Proxmire, 443 U.S. 111, 99 S. Ct. 2675 (1979) (*Plaintiff was **not** a public figure because he did not have access to the media, did not thrust himself or his views into public controversy to influence others, and never assumed role of public prominence*). Mr. Murray utilizes the resources of his companies, including Plaintiffs, to facilitate his political goals and to draw attention to himself and his viewpoints. To the extent Plaintiffs are attempting

to state a defamation claim based on statements "of and concerning" Mr. Murray, they should be held to the same "public figure" standard.

No West Virginia case provides a specific framework for defining a corporation as a public figure. However, other jurisdictions have considered the issue and have formulated standards that take into account, on a case-by-case basis, "the notoriety of the corporation to the average individual in the relevant geographical area," "the nature of the corporation's business," and "the frequency and intensity of media scrutiny that a corporation normally receives." Snead v. Redland Aggregates Ltd., 998 F.2d 1325, 1329 (5th Cir. 1993). Equally important is whether the corporation has "greater access to the channels of effective communication than ordinary private citizens for purposes of counteracting statements it perceives as false." Gertz, 418 U.S. at 344, 94 S.Ct. at 3009. This test has been utilized by various courts in determining the correct standard to apply to a corporate litigant. See Huntington Trust v. Chubet, 1998 Ohio App. LEXIS 5420 (1998), American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania, 592 Pa. 66, 923 A.2d 389 (2007); see also National Foundation for Cancer Research, Inc. v. Council of Better Business Bureaus, Inc., 705 F.2d 98 (4th Cir. 1983).

In their Complaint, Plaintiffs have made a judicial admission that they are "part of the group that constitutes Murray Energy." *See Complaint ¶20.* Consistent with this admission, Bob Murray and his companies have previously been deemed public figures for purposes of other defamation lawsuits they have filed. Murray v. Chagrin Valley Publ. Co., 2014-Ohio-5442, P10, 25 N.E.3d 1111, 1117, 2014 Ohio App. LEXIS 5265, *8, 43 Media L. Rep. 1222 (Ohio Ct. App., Cuyahoga County Dec. 11, 2014) (*"There is no real dispute that Murray and his companies, through his actions and the events that attained national prominence, are public figures subject to comment and discussion.") (emphasis added).* Plaintiffs in this case should be

deemed public figures required to establish actual malice to recover. Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688 (1989).

> **2.      Plaintiffs, as public figures, have not sufficiently alleged that Defendant acted with "actual malice" to state a plausible claim for relief.**

To adequately plead actual malice, Plaintiffs are required to allege facts sufficient to give rise to a reasonable inference that the false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." Sullivan, 376 U.S. at 280. The standard for showing "actual malice" is not an objective one and the beliefs or actions of a reasonable person are irrelevant. St. Amant v. Thompson, 390 U.S. 727, 731, 88 S. Ct. 1323 (1968). The inquiry, instead, is whether The New York Times, acting in bad faith, actually entertained serious doubts as to the truth of what they published in the Editorial, or had a high degree of awareness that the challenged statement was probably false. Id.; Silvester v. Am. Broad. Cos., 839 F.2d 1491, 1493 (11th Cir. 1988) (citing Garrison v. Louisiana, 379 U.S. 64, 74, 85 S. Ct. 209 (1964)); Sweeney v. Prisoners' Legal Servs. of New York, Inc., 84 N.Y.2d 786, 647 N.E.2d 101, 104, 622 N.Y.S.2d 896 (N.Y. 1995); Hoesten v. Best, 34 A.D.3d 143, 821 N.Y.S.2d 40, 49 (N.Y. App. Div. 2006).

In this case, Plaintiffs allege only that The New York Times did not seek input from "Mr. Murray or anyone in the Murray Energy organization" before publishing the Editorial. *Complaint ¶20*. A failure to seek input from the subject of an article or a failure to investigate, standing alone, does not give rise to a conclusion that The New York Times acted with actual malice. Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 692, 109 S. Ct. 2678 (1989); Reuber v. Food Chemical News, Inc., 925 F.2d 703 (4th Cir. 1991) (*en banc*); Church of Scientology Int'l v. Daniels, 992 F.2d 1329, 1334-35 (4th Cir. Va. May 4, 1993) (*affirming summary judgment for commenter who made negative assertions about the Church of*

*Scientology without investigation "given the volume of published commentary on the Church. . . depicting some of the organization's leaders as unscrupulous or criminal, characterizing the entity as a cult or a money making enterprise, portraying its endeavor to style itself as a religion as misleading and opportunistic"*). Actual malice requires more than a departure from reasonable journalistic standards. Levan v. Capital Cities/ABC, Inc., 190 F.3d 1230, 1239 (11th Cir. 1999).

To show actual malice, Plaintiffs must plead facts sufficient to support a plausible claim that, in publishing the Editorial, The New York Times' Editorial Board affirmatively and intentionally sought to avoid the truth. The threadbare assertion in the Complaint that Defendant published the Editorial and statements about "the Murray Energy organization, knowing them to be false or in reckless disregard of their falsity" falls far short of stating a viable claim. *See Complaint ¶4.* Likewise the allegation that "Defendant did not make a single call to Mr. Murray or anyone in the Murray Energy organization to fact check any of the false statements in [the Editorial]" is insufficient, as a matter of law, to establish actual malice. Indeed, even if the statements in the Editorial itself are objectively false, Plaintiffs' Complaint is wholly insufficient to plausibly claim that The New York Times knew the challenged statement was false or acted with reckless disregard of falsity.

As with other states of intent, "actual malice" is subject to the plausibility pleading standard. Iqbal, 556 U.S. at 686-87; Michel v. NYP Holdings, Inc., 816 F.3d 686, 701-04 (11th Cir. 2016) (*pre-Iqbal and Twombly cases holding that failure of public figure plaintiff to adequately plead "actual malice" should not result in dismissal without first conducting discovery are "**completely out of line with the current state of the law**"*) (*emphasis added*). A defamation complaint may be dismissed for failure to state a claim "where the plaintiff has not

pled facts sufficient to give rise to a reasonable inference of actual malice." Michel, 816 F.3d at

702. (citing Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 377 (4th Cir.

2012); Biro v. Condé Nast, 807 F.3d 541, 544-45 (2d Cir. 2015); McDonald v. Wise, 769 F.3d

1202, 1220 (10th Cir. 2014); Pippen v. NBCUniversal Media, LLC, 734 F.3d 610, 614 (7th Cir.

2013)). In Michel, the Court explained the importance of pleading a plausible claim for relief in

the context of a public figure defamation suit:

> [A]pplication of the plausibility pleading standard makes particular sense when
> examining public figure defamation suits. In these cases, there is a powerful
> interest in ensuring that free speech is not unduly burdened by the necessity of
> defending against expensive yet groundless litigation. Indeed, the actual malice
> standard was designed to allow publishers the "breathing space" needed to ensure
> robust reporting on public figures and events. . . . Forcing publishers to defend
> inappropriate suits through expensive discovery proceedings in all cases would
> constrict that breathing space in exactly the manner the actual malice standard was
> intended to prevent. The costs and efforts required to defend a lawsuit through that
> stage of litigation could chill free speech nearly as effectively as the absence of the
> actual malice standard altogether. Thus, a public figure bringing a defamation suit
> must plausibly plead actual malice in accordance with the requirements set forth in
> Iqbal and Twombly. Id. (internal citations omitted).

The totality of the publication and the context of the Editorial provides the public with

enough information to know that the Editorial contains opinions and the reader may weigh the

veracity of the statements for themselves. The Editorial presents the perspectives of the Editorial

Board and any reasonable reader would comprehend that The New York Times is taking a

position on a matter of public concern. The context and content of the Editorial itself tends to

rebut, not support, an inference of actual malice.

**E. The Complaint is constitutionally deficient and should be dismissed because the
challenged statements are not 'of and concerning' any of the Plaintiffs.**

Plaintiffs cannot state a viable claim for relief because the statement within the Editorial

regarding The Crandall Canyon Mine Disaster refers to a specific person—Bob Murray.

According to Plaintiffs, the allegedly libelous publication states that "**Mr. Murray lied** about the

cause of a collapse at a mine that tragically killed six people." *See Complaint ¶3 (emphasis added)*. However Plaintiffs wish to characterize the statement that "Mr. Murray . . . falsely insisted that the 2007 collapse of his Crandall Canyon mine, which killed six miners, was due to an earthquake," no reasonable reader of the Editorial would attribute this statement to Plaintiffs. "A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer." Restatement (Second) of Torts §564 (Am. Law Inst. 1979).

The absence of Bob Murray as a Plaintiff is fatal to the Complaint because Plaintiffs have not identified any false and defamatory statements regarding them. See Kirch v. Liberty Media Corp., 449 F.3d 388, 399-400 (2d Cir. 2006) (*"[t]he 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them."*).

For an alleged defamatory statement to be actionable, it must be "of and concerning" the plaintiff (i.e. it must refer to the plaintiff). Rosenblatt v. Baer, 383 U.S. 75, 83, 86 S. Ct. 669 (1966); New York Times Co. v. Sullivan, 376 U.S. 254, 288-91, 84 S. Ct. 710, 730-32 (1964). **The requirement that the challenged statement actually refer to the plaintiff derives directly from the First Amendment.** Id. If the challenged statement itself does not refer to the plaintiff, it is not actionable. Id. "It is essential in making out a prima facie case in libel to prove that the matter is published of and concerning the plaintiff." Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006) (quoting Julian v. Am. Bus. Consultants, Inc., 2 N.Y.2d 1, 17, 137 N.E.2d 1, 155 N.Y.S.2d 1 (1956)). "In determining whether a statement made was 'of and concerning' a plaintiff, the court must consider whether those who know the plaintiff, upon reading the statements, would understand that the plaintiff was the target of the allegedly libelous

statement." Trudeau v. N.Y. State Consumer Protection Bd., No. 1:05-CV-1019, 2006 U.S. Dist. LEXIS 26308, 2006 WL 1229018, at *9 (W.D.N.Y. May 4, 2006) (*citations and internal quotation marks omitted*); see also Kirch, 449 F.3d at 399 (*standard met if "statement, though not naming the plaintiff, could have been understood by a reasonable reader as being, in substance, actually about him or her"*).

The Editorial's statement about The Crandall Canyon Mine Disaster does not refer to any of the Plaintiffs and could not be understood by a reasonable reader to be "of and concerning" them. Indeed, Plaintiffs' characterization of the challenged statement as branding Bob Murray a liar is inherently personal to him and, as such, Plaintiffs' Complaint is constitutionally defective. Aside from the cursory averment that "the public equates the mining business of each Plaintiff with Mr. Murray," (*Complaint ¶17*) Plaintiffs have failed to sufficiently plead a nexus between them and the challenged statements or to articulate why, for example, a reference to Bob Murray would make a reasonable reader think of "The Marion County Coal Company."

In pleading their claims for relief, Plaintiffs would have this Court disregard their existence as corporate entities, separate from their owner Bob Murray. *Complaint ¶16.* "The law presumes . . . that corporations are separate from their shareholders." Syl. pt. 4, T&R Trucking, Inc. v. Maynard, 221 W. Va. 447, 655 S.E.2d 193 (2007), Syl. pt. 3 (in part), Southern Electric Supply Co. v. Raleigh County National Bank, 173 W. Va. 780, 320 S.E.2d 515 (1984), Syl. pt. 1, Laya v. Erin Homes, Inc., 177 W. Va. 343, 352 S.E.2d 93 (1986).  As stated by the Supreme Court of the United States, "[a] basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.  See e.g., First Nat. City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611, 103 S.Ct. 2591 (1983), rev'd on other grounds, 658 F.2d 913 (2d Cir. 1981) (*"Separate legal personality has been described as an almost indispensable*

*aspect of the public corporation"*); Burnet v. Clark, 287 U.S. 410, 415, 53 S.Ct. 207 (1932) (*"A corporation and its stockholders are generally to be treated as separate entities"*); Dole Food Co., et al v. Patrickson, 538 U.S. 468, 474, 123 S.Ct. 1655 (2003).

If a corporation is created as a means of accomplishing a shareholder's business purposes, the existence of the corporation may not be ignored to avoid its disadvantages. Commissioner of Internal Revenue v. Schaefer, 240 F.2d 381 (2d Cir. 1957); Schenley Distillers Corp. v. United States, 326 U.S. 432, 66 S.Ct. 247 (1946); Terry v. Yancy, 344 F.2d 789 (4th Cir. 1965). Where the company holds a right of action in tort, this right does not extend to the company's owners, just as a cause of action that belongs to an owner individually would not extend to the company. See Mona v. Mona Elec. Group, Inc., 176 Md. App. 672, 698, 934 A.2d 450 (2007) (*"[O]rdinarily, a shareholder does not have standing to sue to redress injury to a corporation."*) (*Citation omitted); Superior Outdoor Signs, Inc. v. Eller Media Co., 150 Md. App. 479, 500, 822 A.2d 478 (2003). The defamation of a company does not create a cause of action for its shareholders or owners and vice versa. See Nat'l Shutter Bar Co. v. G.F.S. Zimmerman & Co., 110 Md. 313, 318, 73 A. 19 (1909) (*stating that publication must refer to the person being defamed*), overruled on other grounds by Cranson v. Int'l Bus. Machs. Corp., 234 Md. 477, 200 A.2d 33 (1964).

If this Court chooses to view the defamation claim of the corporate Plaintiffs and their owner as interchangeable, the constitutionally mandated "of and concerning" test, and long-standing principles of corporate law, would be rendered meaningless. If Mr. Murray wants to try to state a claim for defamation, he will have to step out from behind the Plaintiff corporate entities' curtain, prove that his statements about The Crandall Canyon Mine Disaster being caused by an earthquake were **true** and that he has suffered personal financial harm as a result.

Although the Serial Violator Statement in the Editorial is repeated in Plaintiffs' Complaint, there is no allegation that this statement is false. *Complaint ¶19*. In addition to being accurate and not otherwise actionable, the Serial Violator Statement is not "of and concerning" any of the other Plaintiffs. Accordingly, any defamation claim based on the Serial Violator Statement must also fail as a matter of law. Syl. pt. 1, Hinerman v. Daily Gazette, 188 W.Va. 157, 423 S.E. 2d 560 (1992); Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006).

**F.     Plaintiffs' claims also fail because the challenged statements are expressions of opinion and not otherwise actionable.**

The First Amendment protections that apply in defamation claims are rooted in the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." New York Times v. Sullivan, 376 U.S. 254, 270, 84 S. Ct. 710 (1964). Consistent with this principle, the United States Supreme Court has long recognized that a defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of "fact." See, e.g., Old Dominion Branch No. 496 v. Austin, 418 U.S. 264, 284, 94 S. Ct. 2770-86 (1974) (*publication of pejorative definition of scab was not actionable in that use of words like "traitor" could not be construed as representations of fact*). "A statement of opinion which does not contain a provably false assertion of fact is entitled to full constitutional protection." Maynard v. Daily Gazette Co., 191 W. Va. 601, 447 S.E.2d 293, 299 (1994).

Although West Virginia law applies to this case, this Court should look to federal law, because the requirement that an alleged defamatory statement be of fact, rather than opinion, flows from the First Amendment. See Milkovich v. Lorain J. Co., 497 U.S. 1, 110 S. Ct. 2695 (1990). A defamation action cannot lie where the challenged statements are statements of opinion, which are not capable of being proven either true or false. See Gertz v. Robert Welch,

Inc., 418 U.S. 323, 339-40, 94 S. Ct. 2997 (1974); see also Biospherics, Inc. v. Forbes, 151 F.3d 180, 184 (4th Cir. 1998) (*courts must examine "the [challenged] statement's language and context to determine if it could be interpreted as asserting a fact.*"). Whether a statement is one of actionable fact is a question of law. Biospherics, 151 F.3d at 184-86; Syl. pt. 7 (in part), Long v. Egnor, 176 W. Va. 628, 346 S.E.2d 778 (1986).

"A court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning." Syl. pt. 6, Long v. Egnor, 176 W. Va. 628, 346 S.E.2d 778 (1986). In making this assessment, the tribunal must also consider whether the allegedly defamatory statements could be construed as statements of opinion. The law of libel "overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge is justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." Syl. pt. 4, SER Suriano v. Gaughan, 198 W. Va. 339, 480 S.E.2d 548 (1996).

Plaintiffs contend that the Editorial is libelous because it "falsely stated to the world that Mr. Murray lied about the cause of a collapse at a mine that tragically killed six people." *Complaint* ¶3. However, if this statement "cannot reasonably be interpreted as stating actual facts about an individual," it cannot be the subject of a defamation suit. Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S. Ct. 2695, 2706 (1990) (*internal quotation marks and citations omitted*). Although there is no explicit wholesale "exemption [from liability] for anything that might be labeled 'opinion,'" a statement must state or imply a defamatory fact to be actionable. Id., at 18, 2705. The challenged statements in this case appear in an "Editorial" authored by "the Editorial Board" in "The Opinion Pages" of The New York Times. *See*

**EXHIBIT A.** "Editorials are, by definition, articles that express views and opinion * * * and are commonly understood to be so." Wampler v. Higgins, 2000 Ohio App. LEXIS 2547, *22-24, 2000 WL 730218 (Ohio Ct. App., Pickaway County May 31, 2000) (*additional internal citations omitted*) (*citing* Condit v. Clermont County Review (1996), 110 Ohio App. 3d 755, 675 N.E.2d 475 (1996), discretionary appeal disallowed, 77 Ohio St. 3d 1469, 673 N.E.2d 135 (1996)).

West Virginia has recognized that a qualified privilege exists with respect to publications like the Editorial which constitute "fair comment on matters of public concern." Crump, 320 S.E.2d at 79 (*internal citations omitted*). In the instant case, in order to defeat the qualified privilege associated with The New York Times' publication of the Editorial, Plaintiffs must show actual malice or that The New York Times published the Editorial for a purpose "unrelated to the purpose of the privilege." *Id.* at 78 (*internal citations omitted*). Once again, Plaintiffs have alleged no facts that would give rise to any plausible claim that the Editorial was published with "actual malice" or for an improper purpose. The New York Times regularly publishes commentary on matters of public concern as part of its function as a press organization and its statements within the Editorial are not actionable. In Murray v. Chagrin Valley Publishing Company, an Ohio Court of Appeals found that the following published statements about Bob Murray were privileged and **not actionable** as libel:

> *Kelly Allred, 58, Luis Harnandez, 23, Brandon Phillips, 24, Carlos Payan, 22, Manuel Sanchez, 41, and Don Erickson, 50, were not among the 158 employees fired by Moreland Hills resident Robert E. Murray in the wake of President Barack Obama's re-election. No, those six miners perished after being trapped on Aug. 6, 2007, by a collapse at Mr. Murray's Crandall Canyon Mine in northwest Utah. Their deaths were followed 10 days later by those of three rescue workers, Dale Black, 49, Brandon Kimber, 29, and Gary Jensen, 53, who were attempting to reach them.*
>
> ***When coal miners' lives are so meaningless to those who reap millions from sending them into hazardous working situations in Utah, why would anyone expect their livelihoods to be any more meaningful in Eastern Ohio?***

{00232550-1}                                       21

\* \* \* \*

*It comes as no surprise that **Mr. Murray is so disdainful toward regulations**. Following the Crandall Canyon calamity, the mine operator, Genwal Resources Inc., a Murray Energy subsidiary, was fined $1.64 million, the U.S. government's highest penalty, for violations that were determined to have directly contributed to those nine deaths.*

\* \* \* \*

*Five months before the Crandall Canyon deaths, a partial collapse that should have given ample warning of the impending tragedy was never officially reported to the Mine Safety and Health Administration, as required by law. **Mr. Murray later claimed that he had no knowledge of that March 2007 prelude, but subsequent investigation showed that to be absolutely false.***

*Patriots for Change members **want the public to know who the real liar is and who the coal miners' true enemy is.** Government regulation is not the problem. The problem is a lack of full accountability for those who defy regulations.*

2014-Ohio-5442, ¶19, 25 N.E.3d 1111, 1118-19 (Ohio Ct. App., Cuyahoga County Dec. 11, 2014) (*emphasis added*). In granting summary judgment in favor of the publisher, the Court of Appeals of Ohio reasoned,

> **"[t]he statement calling Murray a liar, along with statements commenting on the value Murray places on the lives and well-being of his employees, are opinions.** Examining the totality of the circumstances, the statements appear as a commentary in a 'letters to the editor' section of a newspaper. This signals to readers that what follows is generally the opinion of the author. The language used also makes clear that the statements are regarding a debate raging between two sides. Further, these statements are not readily verifiable. This can be seen most clearly when examining the statement indicating Murray fired miners the day after the presidential election for political retribution. . . . . Murray may possess ulterior motives for terminating employees the day after the presidential election, but only Murray would truly be privy to that information."

Id., at ¶27, 1121 (*emphasis added*). As with the portion of the Editorial referring to Bob Murray "falsely insisting," only Bob Murray can know if he, in fact, lied or is a liar, and the challenged statement is not provably false. Protection for the type of speech embodied in the Editorial

"provides assurance that public debate will not suffer for lack of imaginative expression ...which has traditionally added much to the discourse of our Nation." Milkovich, 497 U.S. at 20 (*internal quotation marks omitted*). This Court should view the whole of the circumstances in which the statements challenged by Plaintiffs were made. Biospherics, Inc. v. Forbes, Inc., 151 F.3d 180, 184 (4th Cir. 1998). In doing so, the Court is to determine whether the language used is "loose, figurative, or hyperbolic language," as well as the "general tenor of the article." Id. (quoting Milkovich, 497 U.S. at 21). Whether the statement in the Editorial is actionable depends on whether a "reasonable reader" would construe it as seriously asserting that Bob Murray (not a Plaintiff) **is a liar**. Milkovich, 497 U.S. at 21. See also Murray v. Huffingtonpost.com, Inc., 21 F. Supp. 3d 879, 888, 2014 U.S. Dist. LEXIS 64944, *24-25, 42 Media L. Rep. 2161 (S.D. Ohio May 12, 2014) (*granting dismissal of defamation/false light complaint filed by Mr. Murray and Murray Energy Corporation over article titled "**Meet the Extremist Coal Baron Bankrolling Ken Cucinelli's Campaign**" because, given the "totality of circumstances" surrounding the publication, statements were not actionable and Plaintiffs failed to "present plausible claims"*).

Like the statements in Chagrin Valley Times and Huffingtonpost.com, Inc., the statements in the Editorial regarding Mr. Murray, in addition to being true, are either opinion or hyperbole. The Crandall Canyon Statement is an expression of opposition or opinion which is the point and purpose of an editorial. A reasonable reader would recognize the reference to "falsely insisting" as an "expression of outrage" or rhetorical hyperbole. See Horsley v. Rivera, 292 F.3d 695, 701-02 (11th Cir. 2002) (*reference to plaintiff as an "accomplice to homicide" was not a literal assertion that the plaintiff committed a crime*). See also Flowers v. Carville, 310 F.3d 1118, 1127 (9th Cir. 2002). The literal language of the Editorial likewise does not support Plaintiffs' claim because the "falsely insisted" reference does not suggest that Bob Murray

deliberately lied. As with statements on many issues of public concern, a false statement uttered in ignorance is not the same as a lie. The statements in the Editorial of which Plaintiffs complain are made in the context of an expression of concerns raised by the Editorial Board about the acceptance of large inaugural contributions by corporations and individuals seeking to further their agendas with the assistance of the executive branch. The challenged statement "belongs to the language of controversy rather than to the language of defamation." Dilworth v. Dudley, 75 F.3d 307, 310 (7th Cir. 1996).

## IV.   CONCLUSION

Plaintiffs' Complaint, on its face, is legally insufficient. In particular, Plaintiffs cannot recover for defamation because they have not properly or sufficiently alleged falsity of the challenged statements, a publication "of and concerning" any of the Plaintiffs or a plausible allegation that The New York Times acted with "actual malice." When The New York Times' Editorial is examined in its entirety and in context, it is not capable of a defamatory meaning. For the reasons set forth herein, this Court should dismiss Plaintiffs' Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

WHEREFORE, Defendant The New York Times Company respectfully requests that this Court dismiss the Complaint of the Plaintiffs The Marshall County Coal Company, The Marion County Coal Company, The Monongalia County Coal Company, The Harrison County Coal Company, The Ohio County Coal Company and Murray Energy Corporation with prejudice and for such other relief as this Court deems proper.

Respectfully Submitted,

**THE NEW YORK TIMES COMPANY,**
*Defendant,*

Robert P. Fitzsimmons, Esq.
W.Va. State Bar I.D. #1212
Clayton J. Fitzsimmons
W.Va. State Bar I.D. #10823
Counsel for the Defendant
FITZSIMMONS LAW FIRM PLLC
1609 Warwood Avenue
Wheeling, WV 26003
Phone: (304) 277-1700
Fax: (304)277-1705
E-mail: bob@fitzsimmonsfirm.com
E:mail: clayton@fitzsimmonsfirm.com
*Counsel for The New York Times Company*

Holly S. Planinsic
W.Va. State Bar I.D. #6551
Counsel for Defendant
HERNDON, MORTON, HERNDON & YAEGER
83 Edgington Lane
Wheeling, West Virginia 26003
Phone: (304) 242-2300
Fax: (304) 243-0890
E-mail: hplaninsic@hmhy.com
*Counsel for Defendant, The New York Times Company*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE MARSHALL COUNTY COAL
COMPANY, THE MARION COUNTY
COAL COMPANY, THE
MONONGALIA COUNTY COAL
COMPANY, THE HARRISON
COUNTY COAL COMPANY, THE
OHIO COUNTY COAL COMPANY,
and MURRAY ENERGY
CORPORATION,

          Plaintiffs,

v.

THE NEW YORK TIMES COMPANY,

          Defendant.

Case No. 5:17-CV-79 (Bailey)

CIVIL ACTION NO.: 17-C-70
Judge Hummel
(Marshall County Circuit Court)

### CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2017, a true copy of the foregoing *Memorandum of Law in Support of Motion to Dismiss Complaint* was electronically filed with the Clerk of this Court using CM/ECF system, who shall provide electronic notice of such filing to the following counsel:

Jeffrey A. Grove Esq.
David L. Delk Esq.
Grove, Holmstrand & Delk, PLLC
44 ½ 15th Street
Wheeling, WV 26003
*Counsel for Plaintiff*

26

Respectfully Submitted,

**THE NEW YORK TIMES COMPANY,**
*Defendant,*

Robert P. Fitzsimmons, Esq.
W.Va. State Bar I.D. #1212
Clayton J. Fitzsimmons
W.Va. State Bar I.D. #10823
Counsel for the Defendant
FITZSIMMONS LAW FIRM PLLC
1609 Warwood Avenue
Wheeling, WV  26003
Phone: (304) 277-1700
Fax: (304)277-1705
E-mail: bob@fitzsimmonsfirm.com
E:mail: clayton@fitzsimmonsfirm.com
*Counsel for The New York Times Company*

Holly S. Planinsic
W.Va. State Bar I.D. #6551
Counsel for Defendant
HERNDON, MORTON, HERNDON & YAEGER
83 Edgington Lane
Wheeling, West Virginia  26003
Phone: (304) 242-2300
Fax: (304) 243-0890
E-mail: hplaninsic@hmhy.com
*Counsel for Defendant, The New York Times Company*