**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**THE MARSHALL COUNTY COAL CO.,
THE MARION COUNTY COAL CO.,
THE MONONGALIA COUNTY COAL CO.,
THE HARRISON COUNTY COAL CO.,
THE OHIO COUNTY COAL CO.,** and
**MURRAY ENERGY CORPORATION,**

       Plaintiffs,

v.                                   **Civil Action No. 5:17-CV-79
(BAILEY)**

**THE NEW YORK TIMES COMPANY,**

       Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM PURSUANT TO RULE 12(b)(6)**

On this day, the above-styled matter came before this Court for consideration of Defendant's Motion to Dismiss for Failure to State a Claim [Doc. 4], filed June 8, 2017. Plaintiffs filed a Memorandum of Law in Opposition [Doc. 8] on June 22, 2017, and Defendant filed a Reply to Response to Motion [Doc. 9] on June 29, 2017.  The matter is now ripe for adjudication.  For the reasons set forth below, this Court hereby denies Defendant's Motion to Dismiss [Doc. 4] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.).

**I.**      **BACKGROUND**

Plaintiffs filed their Complaint [Doc. 1] in the Circuit Court of Marshall County, West Virginia, on May 3, 2017, wherein they allege that Defendant published defamatory statements that injured the reputation and business of Murray Energy Corporation, which

includes the five Plaintiff coal mines, each of which operates within West Virginia.  On April 24 and 25, 2017, Defendant published, online and in print, an article entitled "Money Talked Loudest at Donald Trump's Inaugural" ("the article").  The article contained two statements that Plaintiffs contend were defamatory.  First, the article stated that Bob Murray, owner and operator of the Plaintiff Corporations, "earned infamy when he falsely insisted that the 2007 collapse of his Crandall Canyon mine, which killed six miners, was due to an earthquake, not dodgy mining practices."  The second stated that Murray Energy "is a serial violator of federal health and safety rules."  Plaintiffs alleged that these statements will cause them to encounter difficulty in securing performance surety bonds, cause lenders to be less willing to engage with Plaintiffs in financing transactions, lead to ineffective discussions with public officials, and lead to losses in business opportunities and good standing in the community and industry.

On June 2, 2017, Defendant removed this matter pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and invoked this Court's diversity jurisdiction.  [Doc 1].  Defendant subsequently filed the Motion to Dismiss on June 8, 2017.  [Doc. 4].  In the Memorandum in Support of the Motion to Dismiss, Defendant contends that Plaintiffs have not sufficiently alleged the falsity of the statements, that the publication was not "of and concerning" Plaintiffs, that Plaintiffs did not sufficiently allege that Defendant acted with actual malice, and that the statements made were opinion.  [Doc. 5]

## II.   LEGAL STANDARD

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."  ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 571

(2007) (emphasis added); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 554-56. The Court in *Twombly* upheld the dismissal of a complaint where the plaintiffs did not "nudge" their claims across the line from conceivable to plausible. *Id*. at 1974.

## III.   DISCUSSION

### A.   Actual Malice and Falsity

Plaintiffs have properly plead both actual malice and falsity of the statements published by Defendant. First, Plaintiffs have sufficiently asserted that the Crandall Canyon Mine and Serial Violator statements were false. The purpose of a 12(b)(6) motion is to test the sufficiency of a complaint, not to determine the merits of the claim, applicability of defenses, or resolve contests surrounding facts. *Edwards*, 178 F.3d at 243. Indeed, as was mentioned above, all doubts, inferences, and allegations must be viewed in a light

most favorable to the Plaintiff, making resolving any issue but the sufficiency of the complaint impossible. *Id*. In their Complaint, Plaintiffs allege that the statement, "Mr. Murray falsely insisted that the 2007 collapse of his Crandall County Mine, which killed six workers, was due to an earthquake," is false because the triggering of the collapse was caused by "what is commonly understood as an earthquake." [Doc. 1 at ¶ 17]. Although it may be somewhat poorly stated, when taken in light of its plain and ordinary meaning, which both parties assert is the proper reading method, "what is commonly understood as an earthquake" still refers to an earthquake, and this Court will interpret it as such for the purpose of this motion to dismiss. Whether the statement was indeed false is a question of fact not suited for a motion to dismiss. As the purpose of a motion to dismiss is merely to test the sufficiency of the claim and the allegation must be viewed in the light most favorable to the Plaintiffs, the Complaint may be read as alleging that an earthquake was the cause of the collapse. This nudges Plaintiffs' claim across the line from conceivable to plausible, with the merit of the Complaint to be determined at a later time. The claim of falsity regarding the Crandall Canyon statement is, therefore, sufficient.

Defendant's allegations regarding the Serial Violator statement face similar issues, that a Motion to Dismiss is not the proper stage to judge the veracity of a claim and that all allegations must be taken in favor of Plaintiffs. Plaintiffs' allegations need not be fully adjudicated as they would be later in the judicial process; they must merely be plausible. Plaintiffs and Defendant are in agreement that the Serial Violator statement is, to an extent, a true statement. However, Plaintiffs turn to defamation by implication in an attempt to circumvent this obstacle to their claim. While it seems unlikely that a reasonable reader would go through the intricate mental gymnastics put forth by Plaintiffs and summarized by

4

Defendant[1], a reasonable reader may read the statement and simply think that the Plaintiffs and Mr. Murray must be worse than other companies for Defendant to have mentioned these violations in an article otherwise concerned with Mr. Murray.  That the statement occurred in the context of an article meant to negatively portray Mr. Murray and President Trump may also sway a reasonable reader to see a truthful statement as intended to defame Mr. Murray.

Certainly defamation may be made by implication as Plaintiffs suggest; Defendant does not contest this legal doctrine.  However, Defendant does contest the application of the doctrine to the instant action and provides a variety of case law supporting the notion that defamation by implication requires a rigorous showing to be proven.  This aspect of the legal doctrine is also certainly true.  One case that is particularly instructive in this instance, provided by Defendant, is *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990).  The court in *White* held that the language must not only be reasonably read to impart the false innuendo, but must affirmatively suggest that the author intended the inference.  *Id*. at 520.  With inferences being drawn in favor of the Plaintiffs as required in a Motion to Dismiss, the information contained in the statement and the context in which the statement was made nudges the claim across the line from conceivable to plausible, though it will continue to be held to the high standard necessitated by defamation by implication.

Plaintiffs' Complaint adequately pleads actual malice.  In their Memorandum of Law

---

[1]This process includes knowing of the many regulations facing coal companies, realizing that many coal companies violate those regulations, and thinking the article is meant to make Plaintiffs look worse than other coal companies.

in Opposition, Plaintiffs cite to **Baker v. Chesapeake Appalachia, LLC**, in which this Court finds a fine summary of the logic behind Plaintiffs having adequately plead both falsity and actual malice. **Baker v. Chesapeake Appalachia, LLC**, 2013 WL 1910378, at *3 (N.D. W.Va. May 8, 2013) (Stamp, J.). In relevant part Judge Stamp wrote, "The plaintiff is not required to allege behavior which could, from the face of the complaint, be objectively determined to be done with malice, or rather to be done intentionally. Rather, he simply must plead facts which could 'plausibly' be found, following discovery and further development of the allegations, to qualify as such." **Id**. This cuts to the core of the present issue. Defendant has presented a bevy of case law and arguments for why Plaintiffs have not sufficiently plead falsity or actual malice, but the arguments provided by Defendant are better suited for addressing Plaintiffs' claims at a later time and on the merits. While Plaintiffs certainly could have framed their Complaint in such a way that a 12(b)(6) motion would not require such a lengthy discussion, they have plead facts that could plausibly be found to qualify as falsity or actual malice. Judgment of this claim on the merits will occur on another day by another standard, which will be more appropriate to the merit-based arguments made by Defendant.

Defendant is, however, correct that the initial statement found in ¶ 4 of the Complaint [Doc. 1] would be insufficient by itself, as it is merely a recitation of the legal standard. Plaintiffs' primary pleading for actual malice comes in ¶ 20 of the Complaint, wherein Plaintiffs allege that Defendant did not contact any of the Plaintiffs to fact check any of the statements. Once again, the purpose of a 12(b)(6) motion is not to judge the claims on their merits, and actual malice can be a particularly slippery standard often requiring an

examination of the totality of the circumstances.  *See **Harte-Hanks Communications, Inc. v. Connaughton**,* 491 U.S. 657, 692 (1989) (The Court relied on the totality of the actions taken by the defendant in finding actual malice.).  Therefore, Plaintiffs' claim that Defendant did not fact check is sufficient to provide a plausible basis for actual malice, especially where other factors exist that may or may not lend more weight to an argument for actual malice on the merits.[2]

### B.      Of and Concerning the Plaintiffs

The statements made by Defendant were of and concerning the Plaintiffs.  Where a defamatory statement is made about an executive of a business in her professional capacity, especially in a business setting, such a statement may be seen as defaming that executive's business if the statement would negatively implicate the business or the manner of the business' operation.  Such a standard may be extended to lower-level employees of a business where there is a clear implication that the defamatory statement about the employees' behavior would reflect negatively on the operation of the business. However, where the interrelationship of an executive and her business is so strong that they may not be separated in the mind of a reasonable person, there exists a presumption that defamatory statements that would damage the reputation of the executive in her business capacity would also damage the reputation of the business.  *See **Market Choice, Inc. v. New England Coffee Co.**,* 2009 WL 2590651 at *5 (W.D. N.C. Aug. 18, 2009); ***VECC, Inc. v. Bank of Nova Scotia***, 296 F.Supp.2d 617, 621 (D. V.I. 2003); ***Life Printing***

---

[2] For example, Plaintiffs allege that Defendant had previously called Plaintiffs regarding stories and had the time to call for confirmation regarding the statements in question as there was no hard deadline for the editorial.

7

*and Publishing Co. v. Field*, 64 N.E.2d 383 (Ill. 1946); ***Dombey v. Phoenix Newspapers, Inc.***, 708 P.2d 742 (Ct. App. Ariz. 1985).

This rule has not been greatly expounded upon in the states of the union, but, where it has been discussed, courts have treated it as a basic tenant of defamation, often treating the rule as a foregone conclusion and mentioning it in passing.  These mentions date at least to the mid-nineteenth century when discussions about corporations in the courts were in their early stages, as demonstrated by ***Trenton Mutual Life and Fire Ins. Co. v. Perrine***, 23 N.J.L. 402, 412 (N.J. 1852).  Therefore, this Court finds this rule to be applicable and sufficient to carry Plaintiffs past a Motion to Dismiss.

First, the statements made about Mr. Murray were made with regard to him in his professional capacity.  When Mr. Murray made the statements about the Crandall Canyon Collapse, he was at a mine, which he operated, speaking as an executive about an event that occurred at the mine.  The statement, therefore, asserts that Mr. Murray was dishonest while in the operation of his business, implying that he would be a dishonest operator of the other Plaintiff businesses.  Second, in the mind of anyone who knows of Mr. Murray, especially in West Virginia and other coal states, it is nearly impossible to separate Mr. Murray from his companies.  With such a strong interrelationship between the two groups, defamation of Mr. Murray, especially in his professional capacity, may be easily seen as defaming his companies and the manner in which they do business.  As has been stated several times, however, this is by no means a judgment on the merits as to whether the companies were defamed, only that the Complaint has been sufficiently plead.  While it may be odd that Mr. Murray has chosen not to participate in this suit, his companies may

still sue in his stead because they are effectively one and the same for the purpose of this suit.

### C.      The Statements as Opinions

Although this issue has largely been addressed in finding that the Plaintiffs have sufficiently alleged actual malice, this Court will briefly discuss the position of the statements as opinions or not.  While the statements were made within the editorial section, which presents a certain presumption that all contained within is opinion, this does not mean that no defamatory statements may be made within an editorial.  As Plaintiffs have sufficiently alleged both falsity and actual malice, it is plausible that the statements made within the editorial were defamatory, allowing the case to continue past a Motion to Dismiss.

## IV.      CONCLUSION

For the reasons discussed above, Defendant The New York Times Company's Motion to Dismiss for Failure to State a Claim **[Doc. 4]** is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: August 10, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

9